UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

SARA M. STELLOH,
              Plaintiff,              Case No.:   07-C-1029

v.

WAUWATOSA SAVINGS BANK,
              Defendant.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER PETITION FOR FEES**

After three days of trial, the jury found that Defendant retaliated against Ms. Stelloh for taking leave under the Family and Medical Leave Act. Ms. Stelloh filed her petition for fees. This brief is submitted in reply to Defendant's objections to that petition.

**A. All Time Spent was Reasonably Related to the Representation in the FMLA Case**

Defendant argues that Ms. Stelloh included time in her fee petition that was not related to the representation in the FMLA case. This time falls into essentially three categories: (a) two initial meetings Ms. Stelloh had with her attorney; (b) representation at her Unemployment Compensation hearing; and (c) virtually all discovery conducted. What defendant fails to recognize in its brief is that this time was all reasonably necessary for the litigation of Ms. Stelloh's FMLA claim.

    **1.**    *Initial Meetings Between Ms. Stelloh and Attorney Salawdeh*

Defendant claims that the initial meetings Ms. Stelloh had with her attorney should not be compensable as they were not spent on her FMLA representation. Defendant makes this claim without explaining how Ms. Stelloh

1

was to obtain representation for her FMLA claims without having an initial meeting with her attorney.  In representing a client, these initial meetings are some of the most important meetings between an attorney and her client.  It is during these meetings that the facts are reviewed in great detail, the relationship starts to build between the two people, and an initial strategy is formed.  That was the case here.  Second Declaration of Salawdeh ¶ 1.  But for these initial meetings, Attorney Salawdeh would have had no way of knowing what the facts were in Ms. Stelloh's case or of being able to advise her of the best strategy in pursuing her FMLA claims.

### 2. *Time Spent on the Unemployment Compensation Appeal*

Unemployment Compensation Appeal hearings are often an efficient way for plaintiffs to obtain early discovery in a case.  It provides an early opportunity to examine adverse witnesses under oath.  Attorney Salawdeh has even recommended this practice in the article she wrote, "Top Ten List of Strategies, Tools and General Practices", <u>The Employee Advocate, A Quarterly Publication of the National Employment Lawyers Association</u>, Summer 2008, p. 172.

Attorney Salawdeh followed that practice in this case.  At the hearing, Ms. Brah was present and Attorney Salawdeh had the opportunity to cross-examine her.  Attorney Binger understood the importance of the Unemployment Compensation Appeal hearing testimony for the FMLA trial, as he asked Attorney Salawdeh to provide him with a copy of the transcript prior to trial.  Ex A to Second Declaration of Salawdeh.  This transcript was marked as Defendant's Exhibit 100.  Fees are reasonable when the information and discovery obtained

2

from the participation in related litigation is necessary for the effective litigation of plaintiff's case. *Green v. Administrators of Tulane Educational Fund,* 284 F.3d 642, 662 (5th Cir. 2002) The information and discovery obtained from Attorney Salawdeh's participation in Ms. Stelloh's Unemployment Compensation Appeal hearing was necessary for the effective litigation of this case and therefore, fees should be allowed for this time.

### 3. *Discovery Conducted*

Defendant seeks to strike the award of fees for all time spent in drafting interrogatories, request for production of documents, depositions of witnesses, and reviewing discovery received from Defendant. It states that it should be excluded, because this was done in the context of the Equal Rights Division (ERD) case and not in the context of this FMLA case.

What Defendant fails to acknowledge, however, is that the discovery in the ERD case was the exact same discovery that was used in this FMLA case. The exhibits and depositions used at trial are the same exhibits and depositions that Defendant is now trying to exclude.[1] In short, this discovery was the very discovery that was used to prepare for this trial. No other discovery was done.

The fact that the discovery conducted for the ERD hearing was the same as the discovery that was used for this trial was discussed in pre-trial conferences with this Court. As early as our first status conference, Your Honor asked Plaintiff to provide a status report on the discovery in the Equal Rights

---

[1] Defendant also seeks to exclude the time Attorney Salawdeh spent deposing Ms. Stelloh's two managers because they did not appear as witnesses at trial. When determining whether fees are reasonable for time spent, the question is not whether the particular information sought was directly used at trial, but rather whether it was reasonable. As the issues presented addressed Ms. Stelloh's work performance, deposing her managers at the time was reasonable.

Division case. Attorney Salawdeh then filed a letter dated April 4, 2008, with this Court updating the status of discovery in the ERD hearing. As yet, the Administrative Law Judge in the ERD hearing has not made a ruling. Therefore, this is not a case of a petition for fees, which have otherwise been awarded. However, as this FMLA case has now been decided by the jury, it is appropriate to award fees for the time reasonably necessary in preparing this case. Defendant makes no argument that this time was not reasonably necessary – only that it is not related to the FMLA case. As this discovery was clearly related to the FMLA case, an award of fees is reasonable for the time spent on the discovery. *See Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002).

### B. The Submitted Time Does Not Reflect Time Duplicated by Attorney Lee and Attorney Salawdeh

Defendant also seeks to strike virtually all time spent by Attorney Lee on this case. Defendant argues that the time spent by the two attorneys was a duplication of efforts. However, there was actually very little duplication of efforts between Attorney Salawdeh and Attorney Lee and their work was very complimentary.

Defendant's argument that Attorney Salawdeh and Attorney Lee duplicated time has been made with no actual examination of the time spent by each attorney. First, Defendant lists times that should be excluded for Attorney Lee based almost exclusively on whether the two attorneys performed the work on the same day. For example, Defendant lists the time of Attorney Lee on December 2, 2008 to be redundant with Attorney Salawdeh. This is despite the

4

fact that on that day, Attorney Lee spent his time preparing the jury instructions, while Attorney Salawdeh was preparing the pre-trial report, reviewing case law, and only *reviewed* the jury instructions, which had been prepared by Attorney Lee.  On January 4, 2009, Attorney Lee spent over seven hours on trial preparation – much of this in Chicago, while Attorney Salawdeh spent the day finalizing exhibits, finalizing the exhibit list, and making final trial preparations in Milwaukee.  While the two attorneys did consult with each other, that was only a short telephone call.  Second Declaration of Salawdeh ¶ 4.  Nonetheless, Defendant describes 2.3 hours of Attorney Lee's time as duplicate.  On January 6, 2009, Defendant seeks to limit the time spent by Attorney Lee in preparing for the cross examination of Ms. Eden, even though it was Attorney Lee who conducted the cross examination of Ms. Eden and no time was expended by Attorney Salawdeh with respect to this witness.

Defendant also argues that there should be no award of fees for anytime spent by Attorney Lee and Attorney Salawdeh together in collaboration.  However, collaboration or working with a "team" approach, can often be more efficient and lead to a cost savings.  *See, Cooper v. Casey*, 897 F.Supp. 1136 at 1139 (N.D. Ill. 1995), *vacated on other grounds*, 97 F.3d 914 (7th Cir. 1996).  Courts have found that reasonable hours may include time spent by more than one attorney on a particularly issue or task, so long as there is no duplication of effort.  *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1200 (9th Cir. 2002).  The importance of working together in a team approach is also specifically addressed by the Declaration of Attorney Patrick Patterson:

> In my experience, it is almost always helpful and sometimes essential for attorneys to work together and consult with each other in preparing for trial and trying a case, particularly a case that is tried before a jury. Indeed, as a trial advocacy professor, I encouraged my students to work in teams and try cases with other lawyers so they could test their themes, theories of the case, and evidence in consultation with others before presenting them to a court or jury, and this is what I do in my own practice. Similarly, when I taught appellate advocacy, I encouraged my students to work with other attorneys in writing briefs and to participate in dry runs or mock oral arguments with other attorneys for the same reasons, and I also do this in my own practice. Being able to try a case with the assistance and guidance of a relatively more experienced attorney such as Mr. Lee is particularly valuable for a relatively less experienced attorney such as Ms. Salawdeh.

Declaration of Patrick O. Patterson ¶8.

Defendant's argument is also inconsistent. While acknowledging that Attorney Lee and Attorney Salawdeh divided the trial work – trading off examining witnesses and other trial responsibilities – it then seeks to eliminate the time spent on these tasks by Attorney Lee. As a result of the cooperation of the two attorneys, each was able to focus on her or his areas of responsibility, relying on the other to ensure that all work would be completed. For example, Attorney Salawdeh did not spend any time on the preparation of those witnesses examined by Attorney Lee. She also spent very little time on preparation of *voir dire* – leaving those responsibilities up to Attorney Lee. As Attorney Patterson notes in his Declaration, "the division of labor and the degree of cooperation and consultation between these attorneys were also reasonable." Patterson Declaration at ¶9. Defendant's arguments do not take these facts into account – that the time spent by either Attorney Lee or Attorney Salawdeh would have been significantly greater had the two attorneys not worked together.

Defendant also fails to acknowledge that throughout the trial, there were two attorneys representing the Defendant – Mr. Binger and Mr. Bruss. Defendant has not stated that it only compensated one of the two attorneys for the representation at trial. Defendant has also not stated that although Mr. Bruss was present, he did not provide any assistance with the legal representation of Defendant at trial. Defendant fails to provide any explanation as to why it is was reasonable for Defendant to have two attorneys, but not for Ms. Stelloh.

Finally, Defendant argues that fees should not be awarded for the time Attorney Lee spent in learning the facts of this case. This is similar to Defendant's argument that fees should not be awarded for Attorney Salawdeh's initial meetings with Ms. Stelloh. For Attorney Lee to be able to perform any work on the case, it was necessary for him to learn the facts of the case. Attorney Lee's need to do so is substantially similar to the type of work that Attorney Binger must have done when he first took over litigation of this case – as he also was not Defendant's attorney from the beginning. Defendant has produced no evidence that Attorney Binger did not submit a bill to his client for the work he did in learning the facts and issues of the case once he got involved. It is reasonable to assume, in fact, that Attorney Binger did submit just such a bill for services to Defendant. If it were reasonable for Attorney Binger, it is also reasonable for Attorney Lee.

### C. Attorney Lee's Hourly Rate Should Not Be Reduced

A defendant's failure to introduce any *affirmative evidence* that the claimed hourly rates are unreasonable concedes the reasonableness of the

claimed hourly rates. As the Seventh Circuit stated:

> Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing 'a good reason why a lower rate is essential.' [citation omitted] <u>A defendant's failure to do so is essentially a concession that the attorney's billing rate is reasonable and should be awarded</u>.....See, Pressley v. Haeger, 977 F.2d 295, 299 (7th Cir. 1992) (holding that court was required to award an attorney's billing rate where defendant had submitted no evidence on fees).

People Who Care v. Rockford Bd. of Ed., School Dist. No. 205, 90 F.3d 1307 at 1313-14 (7th Cir. 1996) (emphasis added).

Attorney Lee met his burden of providing evidence of his actual billing rate of $475 per hour. Attorney Lee's actual billing rate for comparable work is presumptively appropriate. *Id.* at 1310.

Having provided evidence of his actual billing rate, it was up to Defendant to "present evidence establishing 'a good reason why a lower rate is essential." *Id.* However, Defendant presented no evidence of the necessity of a lower rate for Attorney Lee.[2] The only evidence presented by Defendant was an affidavit of Attorney Binger's rate. However, there was no argument that Attorney Binger's experience is comparable to Attorney Lee. There was no argument that Attorney Lee should be compensated comparable to Attorney Lee or even Attorney Salawdeh. Other than saying that Attorney Lee should be compensated at some lower rate, Defendant produced no evidence or argument of what rate Attorney Lee should actually receive. Having failed in meeting its burden, Attorney Lee's billing rate should not be reduced and his rate should be at the only rate for

---

[2] As Defendant has not objected to the reasonableness of Attorney Salawdeh's hourly rate the conclusion is that it is conceding to its reasonableness.

which there is actual evidence – Attorney Lee's actual billing rate of $475 per hour.

### C. The Submitted Time Does Not Otherwise Include Any Unnecessary Time.

Defendant argues that Attorney Salawdeh should also not be compensated for other time spent – either because it was excessive or because it was not necessary. However, Defendant's arguments ignore the actual facts of what happened, mischaracterize the reason for the time spent, or discount time without actual evidence or support for why the time should be reduced.

#### 1. *Opening Argument*

Defendant argues that Attorney Salawdeh should not be compensated for time spent in preparing her opening. This is because, it argues, that she did not present the opening argument. However, as the record will show, Attorney Salawdeh did give the opening statement for the Plaintiff. Defendant does not argue that the time she spent was unreasonable for a person who did present the Opening Statement – only that she did not do it. As she did present the Opening Statement, fees should be awarded for the time spent in preparing for it.

#### 2. *Drafting the Complaint*

Defendant argues that the time spent on drafting the complaint should be reduced by nearly two-thirds. Defendant provides no reasoning or evidence as to why it should be reduced, other than it believes that it should have taken less time to draft the complaint. By comparison, for example, Defendant does not even produce its own time records showing the time its attorneys spent in

9

preparing the answer to Ms. Stelloh's complaint as a comparison for the time reasonably necessary in drafting an initial pleading.

Evidence was presented, however, by Ms. Stelloh as to the reasonableness of the time spent on drafting the complaint. First, the contemporaneous time records reflect the time that was actually spent in drafting the complaint. Drafting the Complaint required more than simply typing thirty paragraphs. It required ensuring that the facts were correctly stated and all procedural requirements were met.[3] Second, the affidavits of Attorney Jeff Scott Olson and A. Steven Porter both attest to the fact that they each reviewed the time records and found the time spent by Attorney Salawdeh was reasonable.

### 3. *Amending the Complaint*

Defendant objects to the time Attorney Salawdeh spent on the motion to amend the complaint. However, much of that extra time was spent because of Defendant's own actions. Upon receiving the initial Answer filed by Defendants, Attorney Salawdeh became aware that the incorrect Defendant had been named. She contacted Defendant and asked if it would stipulate to allowing her to amend the complaint. Defendant refused. Therefore, Attorney Salawdeh was forced to take the step of filing a Motion to Amend the Complaint. But for Defendant's refusal, this time would not have been spent. Therefore, it was not Attorney Salawdeh's naming of the incorrect Defendant that caused her to spend the extra

---

[3] When one looks at Defendant's argument as a whole, it makes even less sense. Defendant argues that Attorney Salawdeh should not be compensated for initial client meetings or for virtually any work performed in gathering information about Ms. Stelloh's claims. It then also argues that fees should not be awarded for the majority of time spent preparing the Complaint. However, Defendant fails to explain how Attorney Salawdeh was to draft the Complaint in such a short time with no prior opportunity to obtain information about the facts on which the Complaint is based.

time, but Defendant's refusal to stipulate and insistence that a motion be filed to caused this time to be incurred.

### 4. *Brainstorming*

Defendant argues that there should also not be an award of fees for the time spent by Attorney Salawdeh and Attorney Lee on brainstorming. However, this time was critical in the preparation of Ms. Stelloh's case. During these sessions, Attorney Salawdeh and Attorney Lee sought the advise and input of other expert plaintiff employment lawyers both in Chicago and Milwaukee on important trial strategy issues, such as the selection and order of witnesses, the value of certain types of evidence, and the framing of trial themes. Radtke Affidavit at ¶ 4. These sessions helped Attorney Salawdeh and Attorney Lee to prepare a better case with a more efficient use of time, as they received valuable and important insight and assistance from other qualified attorneys. Second Declaration of Salawdeh ¶ 3. Significantly, these other attorneys volunteered their time to assist Attorney Salawdeh and Attorney Lee and Ms. Stelloh is not seeking fees for the time these attorneys expended in preparing the case.

The concept of conducting Brainstorming sessions is also not unique to this litigation. For example, discussing case theory with others is recommended in the book, Winning at Trial: "One way to decide your case theory is to tell your friends, family members, and associates the facts of your case, and see if they agree with your theory." Read, D. Shane, Winning at Trial (NITA) (2007) at p. 9. A similar recommendation is made in Trail Advocacy Basics: "As you prepare a case for trial, you are in constant danger of losing your perspective....One of the

11

best ways to jerk yourself back to reality is to try out your theory on objective lay persons." Gitchel, Dent, and O'Brien, Molly Townes, Trial Advocacy Basics (2006)(NITA) at p. 33. Attorney Lee and Attorney Salawdeh followed these recommendations when they sought the advice and input from other attorneys. This was reasonable time and fees should be awarded for the time spent in this type of trial preparation.

**D.      Ms. Stelloh Prevailed at Trial Making the Award of Fees Reasonable.**

   *1.      Ms. Stelloh Prevailed in Her Retaliation Claim*

The Supreme Court has long held that a full award of attorneys fees is appropriate, even in cases in which the Plaintiff does not prevail on all causes of action. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 435-436 (1983). The claim-chopping approach of automatically reducing fees by one-half when Plaintiff prevails on one of two claims "provides little aid in determining what is reasonable in light of all the relevant factors." *Id.* at 435 n. 11. When the claims are based on a common core of facts, it is not necessarily appropriate to adjust the fees downward, even when the Plaintiff does not prevail on all claims. "The time devoted to claims on which plaintiffs did not prevail cannot reasonably be separated from time devoted to claims on which plaintiffs did prevail." *City of Riverside v. Rivera*, 477 U.S. 561, 570-71 (1986). For example, a court does not abuse its discretion by refusing to reduce the award of attorneys fees to account for the lack of success

on state-law claims, when the state-law and FMLA claims contained a common core of facts which made the division of hours expended difficult. *Nichols v. Ashland Hospital Corp.*, 251 F.3d 496, 504 n.4 (4th Cir. 2001). The Eleventh Circuit also held that a District Court did not abuse its discretion when it refused to reduce a fee award because the plaintiff prevailed on only half of her claims. It wrote,

> A review of the record establishes that evidence supporting Goldsmith's successful claim of retaliation was inextricably intertwined with evidence supporting his unsuccessful claims, and the punitive damages award was supported by evidence underlying the unsuccessful claims. . . . Because Goldsmith's successful claim of retaliation was related to his unsuccessful claims and he "won substantial relief," we conclude that the refusal of the district court to reduce the amount of attorney's fees and costs was not an abuse of discretion.

*Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1292 (11th Cir. 2008).

In this case, Plaintiff's two claims had a common core of facts. The retaliation claim addressed primarily the question of did Defendant terminated Ms. Stelloh in retaliation for taking her FMLA leave. The question raised by Ms. Stelloh's FMLA interference claim was whether the termination interfered with her rights to future FMLA leave. Had Ms. Stelloh's attorneys spent time preparing and presenting evidence of her need for leave in the future, admittedly, that would be a separate and distinct set of facts that would have been required for the FMLA interference claim. However, the evidence presented of Ms. Stelloh's need for future FMLA leave – evidence that was necessary for the FMLA interference claim – was admittedly very limited. The focus of the evidence at trial was on the reason for Ms. Stelloh's termination – which is the core set of

facts required for establishing a FMLA retaliation claim. Therefore, it is reasonable that no reduction of fees should be made, although the jury found Defendant liable on the FMLA retaliation claim alone.

### 2. Ms. Stelloh Obtained the Relief Sought at Trial

Defendant also argues that the attorneys' fee should be reduced because although the jury found that the Defendant had retaliated against Ms. Stelloh in violation of the Family and Medical Leave Act by terminating her for her use of medical leave, it chose to award her approximately three months of lost wages rather than lost wages for the entire time she has been off of work. However, this jury verdict is enough to make Ms. Stelloh the prevailing party and entitled to an award of fees. *Dennis v. Columbia Colleton Medical Center*, 290 F.3d 639, 652-53 (4th Cir. 2002).

Defendant appears to be arguing that the fee award should be reduced in proportion to the jury award. However, the Supreme Court has specifically rejected that argument in *City of Riverside v. Rivera*, 477 U.S. 561, 573-74 (1986). The Court wrote:

> A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting §1988. Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process . . . These victims ordinarily cannot afford to purchase legal services at the rates set by the private market. . . . Moreover, the contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries.

*Id.* at 576-77. Ms. Stelloh was successful in her goal of obtaining a jury verdict finding that Defendant violated the Family and Medical Leave Act. Ms. Stelloh was also successful in her goal of obtaining an award of lost wages resulting from Defendant's unlawful actions. That Ms. Stelloh did not obtain all of the lost wages for her entire period of unemployment does not mean that she did not prevail against Defendant.

Modifications of the attorney fee award based on the results obtained "are proper only in certain 'rare' and 'exceptional' cases." *Delaware Valley Citizens' Council*, 478 U.S. 546, 565 (1986). This was not one of those rare or exceptional cases. Ms. Stelloh obtained all of the types of relief she requested, just not in the total amount requested. This is not a justification for the reduction of the attorney fee award.

Dated this 9th day of March, 2009

                                               Salawdeh Law Office, LLC

                                               By: s/Rebecca L. Salawdeh
                                                      Rebecca L. Salawdeh
                                               Attorney for Plaintiff, Sara M. Stelloh

Address:
2281 Swan Boulevard
Wauwatosa, WI 53226
T: 414-455-0117
F: 414-918-4517
E: Rebecca@salawdehlaw.com